The NEW 3145 DEAUVILLE, L.L.C., Appellant,

v.

FIRST AMERICAN TITLE INSURANCE COMPANY, et al., Appellees.

No. 04–CV–321.

District of Columbia Court of Appeals.

Argued May 23, 2005.
Decided Aug. 25, 2005.

---

Kenneth Loewinger, Washington, DC, for appellants.

Nat N. Polito, Washington, DC, with whom Avis M. Russell and Wendy Hartmann, were on the brief, for appellees.

Before WASHINGTON, Chief Judge,* RUIZ, Associate Judge, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge:

Appellant, The New 3145 Deauville, L.L.C. ("New Deauville"), and appellee District of Columbia Water and Sewer Authority ("WASA") are in dispute over unpaid water and sewer bills. The trial court entered summary judgment in favor of

---

* Judge Washington was an Associate Judge of the court at the time this case was argued. His status changed to Chief Judge on August 6, 2005.

WASA for $369,450.55, plus interest of $65,347.71. In doing so, the trial court ruled, among other things, that New Deauville's allegations were too conclusory to create any genuine issue of material fact as to the balance owed and that the statute of limitations is inapplicable to WASA as a sovereign entity. We hold that WASA is not generally exempt from the bar of the statute of limitations, but that, except for the possible application of the statute to bar the older portion of the claimed balance, summary judgment was properly granted.

## I. Facts

On March 25, 2002, New Deauville entered into a contract to sell the property located at 3145 Mt. Pleasant Street, N.W., Washington D.C. to Deauville Partners, L.L.C. ("Deauville"). At the time of the contract, New Deauville had a dispute with WASA over unpaid water and sewer bills in excess of $357,000. As a result, New Deauville and Deauville executed an escrow agreement with the First American Title Insurance Company ("FATICO"). Pursuant to the escrow agreement, New Deauville deposited $600,000 in an escrow account held by FATICO as a precondition to FATICO's insuring the sale of the property.

The escrow agreement set forth two situations in which FATICO had authority to release the funds to pay the bills. First, upon written receipt from WASA of a delinquent balance less than $357,000, and with New Deauville's agreement, FATICO was to pay the lesser amount to satisfy New Deauville's liability.[1] Second, if by September 1, 2002, FATICO had not received from WASA a written statement agreeing to accept an amount less than $357,000, FATICO would obtain a bill from WASA and pay the amount due.[2] The escrow agreement also authorized FATICO to tender the escrow funds to the registry of a competent jurisdiction where FATICO believed it to be justified to do so.[3]

WASA did not agree to accept a lesser amount than $357,000. On July 31, 2002, New Deauville, disputing WASA's final balance figure of $369,450.55, instructed FATICO to keep the funds in escrow and not to satisfy any debt owed to WASA. On September 13, FATICO filed an interpleader action with the Superior Court of the District of Columbia against WASA, New Deauville, and Deauville. The com-

1. The escrow agreement reads in relevant part as follows:

 Upon written receipt from the D.C. Water and Sewer Authority of the amount due for delinquent water/sewer [sic] of an amount less than $357,000.00, not including current water charges for which a final water reading has been requested, Escrow Agent shall pay said lesser amount, subject to agreement by Seller [New Deauville], and refund to Seller *AFTER RECEIPT OF THE FINAL WATER* BILL [sic], the balance of the Water Escrow Account.

2. The relevant provision of the escrow agreement reads as follows:

 Seller hereby agrees that if, by September 1, 2002, the Escrow Agent has not received a written statement from the D.C. Water and Sewer Authority agreeing to accept an amount less than $357,000 for delinquent charges, Escrow Agent will obtain a bill from the D.C. Water and Sewer Authority for said delinquent charges and pay the amount due and owing said Authority.

3. The escrow agreement provides:

 In the event of a dispute between any of the parties hereto sufficient in the sole discretion of Escrow Agent to justify its doing so, Escrow Agent shall be entitled to tender unto the registry or custody of any court of competent jurisdiction all money or property in its hands held under the terms of this Escrow Agreement, together with such legal pleading as it deems appropriate, and thereupon be discharged.

plaint asserted that FATICO was a disinterested stakeholder in the property and sought the court's permission to deposit the disputed escrow funds into the court registry. Both WASA and New Deauville answered the interpleader complaint. New Deauville raised multiple challenges to WASA's claim, contending, among other things, that some of the bills were barred by the three-year statute of limitations and that the alleged amount of debt owed to WASA was inaccurate.[4]

At the end of discovery, WASA moved for summary judgment, relying on its ledger accounts and an affidavit by its acting collection manager. In opposing summary judgment, New Deauville presented as evidence only an affidavit of John Redmond, the managing member of New Deauville. The trial court granted summary judgment in favor of WASA, ruling, among other things, (1) that the Redmond affidavit was too conclusory to create any genuine issue of material fact as to the balance due asserted by WASA, and (2) that WASA was not subject to the statute of limitations under the common law doctrine of *nullum tempus occurrit regi* (no time runs against the sovereign). New Deauville's appeal is limited to a challenge of these two rulings.

## II. Summary Judgment

 We review a trial court order granting summary judgment *de novo*. *Brown v. George Washington Univ.*, 802 A.2d 382, 385 (D.C.2002). The various factors relevant to such a determination are well-settled. They were recently reviewed at length in *Va. Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs.*, No. 03–CV–392, slip op. at 9 (D.C. July 14, 2005). In brief, a motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c); *Chang v. Inst. for Public–Private P'ships, Inc.*, 846 A.2d 318, 323 (D.C.2004). The court must view all the evidence presented in the light most favorable to the nonmoving party and draw all reasonable inferences from the evidence for that party. *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983). The role of the court is not to try an issue as factfinder, but rather to decide whether there are genuine issues of material fact to be decided by the jury. *Id.* at 814–15. The nonmoving party cannot survive a summary judgment motion on merely conclusory allegations or denials of the adverse party's pleadings; rather, "the [ ] response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Super. Ct. Civ. R. 56(e); *see Chang*, 846 A.2d at 323–24. "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Brown*, 802 A.2d at 385 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "[T]o summarize, the test for deciding a motion for summary judgment is essentially the same as that for a motion for a directed verdict." *Weakley v. Burnham Corp.*, 871 A.2d 1167, 1173 (D.C.2005) (citation omitted).

Here, the record reveals that WASA, in support of its motion for summary judgment, presented the affidavit of Rosie Jenkins, WASA's acting collections manager, and the ledger reports for the two accounts associated with the property. The

---

**4.** The litigation also involved various counterclaims and cross-claims, the resolutions of which are not challenged in this appeal.

affidavit elaborated on the ledger reports showing that as of July 18, 2002, the total amount owed on the accounts for the property was $369,450.55. The evidence, if uncontroverted at trial, would allow WASA to collect the $369,450.55. Further, WASA pointed out that New Deauville had failed to develop any evidence during discovery to dispute the amount of the bills asserted by WASA.[5] The record indicates that at the time WASA filed its motion for summary judgment, New Deauville disputed the water bills in its answer to the interpleader complaint only in general terms, such as assertions that "water meters were broken, pipes contained leaks, and property did not possess occupancy level capable of producing such high water bills."

■ In its response in opposition to WASA's motion for summary judgment, New Deauville filed an extensive statement of alleged material facts in dispute but, in support thereof, relied only on an affidavit of John Redmond, managing member of the property. In the affidavit and opposition, New Deauville made multiple assertions, including that "the balance on the account is not as alleged;" "[t]he

meter readings by WASA personnel were not actual reads from the meter;" "[t]he WASA system depended on estimated readings . . . and the WASA system was not 100% accurate each month;" "WASA failed to give proper credit to bills that were paid on time;" WASA "made no attempt to investigate and detect meter malfunctioning;" and failed to "validate the results by a certified lab," and "WASA and its attorneys have, in bad faith, refused to negotiate or discuss the water bill account." However, the affidavit failed to set forth detailed facts of which the affiant had personal knowledge or to give specific facts underlying its broad assertions, but spoke only in generalities. Without further proof or specificity, the affidavit contained merely conclusory reiterations of the allegations of New Deauville's answer to the interpleader complaint.[6]

In sum, on our examination of the record, we agree with the trial court that "New Deauville, despite its statements to the contrary, has not alleged any specific facts that would constitute a challenge to the charges levied by WASA."[7] In the

---

**5.** WASA complained that despite its discovery requests, backed by a court order, New Deauville had continuously failed to respond and the Redmond affidavit should therefore be disregarded.

**6.** In its brief to us, WASA gives cogent examples of the manifold ways in which New Deauville could have presented evidence of specific facts to contest the amount of WASA's claim: "In this case, for example, New Deauville could have named an expert familiar with charges for water and sewer service who prepared a report concluding that the bills charged to New Deauville for the Mt. Pleasant Property were inaccurate, including the interest calculation. New Deauville could have submitted information relating to water usage demonstrating some inaccuracy in the billing. New Deauville could have provided the Trial Court with documentary support, including canceled checks and a calculation, supporting its allegation that WASA did not give it proper

credits for payments. New Deauville could have given examples, if any, of the alleged inaccurate information provided by WASA and how such inaccurate information would have changed the amounts of the bills. New Deauville could have taken discovery in an attempt to establish the inaccuracy of WASA billing in this matter. There was no such evidence before the Trial Court. Indeed, there was no evidence offered by New Deauville as to the correct amount of the bills or what the amount of the bills should have been. Other than WASA's Affidavit and supporting ledger, the Trial Court had no information which would suggest an alternative total bill."

**7.** WASA further argued that, in any event, New Deauville was barred from challenging the correctness of the amount of the bills because it had failed to exhaust the procedures set forth in the municipal regulations

posture of this case, the trial court quite rightly concluded that summary judgment could be properly entered with respect to the amount of the unpaid bills, provided it was correct in its ruling that no portion of that amount was subject to the legal defense of the statute of limitations as properly raised by New Deauville in its answer. We turn to that issue.

### III. Statute of Limitations

■ New Deauville contends that the trial court erred in ruling that WASA could invoke the doctrine of nullum tempus to avoid the statute of limitations. The common law has long accepted the principle *nullum tempus occurrit regi*—neither laches nor statutes of limitations will constitute a defense to suit by the sovereign in the enforcement of a public right. *See District of Columbia v. Owens–Corning Fiberglas Corp.*, 572 A.2d 394, 401 (D.C. 1989). The District of Columbia, like a state government, is entitled to the protection of the doctrine of *nullum tempus,* a protection that is now codified in perhaps even broader application in D.C.Code § 12–301.[8] The trial court concluded that WASA was an "arm of the State" in performing its functions here and hence not subject to the statute of limitations.

However, subsequent to this determination by the trial court, we held in *D.C. Water & Sewer Auth. v. Delon Hampton & Assocs.*, 851 A.2d 410, 416 (D.C.2004),

that "functions and activities of WASA, a separate corporate body distinct from the District of Columbia, are proprietary in nature and thus beyond the protection of *nullum tempus*" and likewise of the exception in § 12–301. Thus, WASA is subject to the statute of limitations with respect to that portion of the outstanding debt of New Deauville to WASA to which the statute of limitations could constitute a defense.

WASA argues that even if it is subject to the statute of limitations as a general matter, the statute does not prevent its collection of any portion of the debt here. It raises several arguments for the inapplicability of the statute, notably that by the execution of the escrow agreement, New Deauville reacknowledged the debt in writing, thus extending the statute of limitations, and that New Deauville waived any challenge to the water bills, including its claim that portions of the bills were barred by the statute of limitations, when it failed to exhaust the procedures set forth in the municipal regulations for challenging water bills.[9] Neither of these arguments as related to the application of the statute of limitations was addressed by the trial court, given its ruling that the statute of limitations did not apply at all to WASA. Their resolution may involve factual elements not clear in the record on appeal. The case would be remanded for calcula-

for challenging water bills. *See* 21 DCMR § 402, which provides two options for challenging a water bill, either by "(a) [p]aying the bill, and notifying WASA in writing that he or she believes the bill to be incorrect and is paying under protest; or (b) [n]ot paying the current charges contained in the bill and notifying WASA in writing, within ten (10) working days after receipt of the bill of the reason(s) why the bill is believed to be incorrect." We need not reach this argument.

8. That section sets forth the limitation of time for bringing various kinds of actions but then

provides in its final paragraph: "This section does not apply to actions for breach or [sic] contracts of sale governed by § 28:2–725, nor to actions brought by the District of Columbia government."

9. *See* 21 DCMR § 402, cited at note 7, *supra.* Although the trial judge relied on that section as an alternative ground for rejecting New Deauville's challenges to the correctness of the amount of the bills, it did not address its relevance to the defense of the statute of limitations, a distinct issue.

tion as to the amount of the debt to which the statute of limitations applies, if at all. Overall, we conclude that the preferable course of action is to permit the trial court to address in the first instance these further arguments of WASA with respect to the statute of limitations. *See Jones v. Williams,* 861 A.2d 1269, 1270 (D.C.2004); *Wagner v. Georgetown Univ. Med. Ctr.,* 768 A.2d 546, 560 (D.C.2001).

The case is remanded for further proceedings consistent with this opinion.

*So ordered.*