Donna **VINES**, Appellant

v.

**MANUFACTURERS & TRADERS TRUST COMPANY, et al.,** Appellees.

No. 06–CV–882.

District of Columbia Court of Appeals.

Argued Oct. 4, 2007.
Decided Nov. 15, 2007.

4. N.J. Attorney Disciplinary Rule, § 1:20

Bernard A. Gray, Sr., Washington, DC, for appellant.

Alan L. Balaran, for appellee, Manufacturers & Traders Company.

Carol Blumenthal, Washington, DC, for appellee, D.C. Properties, LLC.

Before REID and KRAMER, Associate Judges, and NEBEKER, Senior Judge.

REID, Associate Judge:

Appellee, D.C. Properties ("DC Properties"), purchased a condominium unit after appellee, Allfirst Bank (replaced here by Manufacturers & Traders Trust Company ("M & T")), foreclosed on the unit, then owned by appellant, Donna Vines. Ms. Vines seeks to overturn judgment orders of the trial court (1) striking her plea of title and granting possession of the condominium unit to DC Properties; and (2) granting summary judgment to M & T on

her third-party complaint alleging wrongful foreclosure. We hold that (1) under our appellate rules, we lack jurisdiction over the trial court's first judgment order because Ms. Vines failed to designate it as an order being appealed; and (2) with respect to the second judgment order, summary judgment in favor of M & T was proper because, as a matter of law, Ms. Vines cannot prevail on her wrongful foreclosure complaint.

## FACTUAL SUMMARY

The record shows that Ms. Vines obtained a mortgage from Allfirst Bank ("Allfirst") and purchased a condominium unit, located in the Northeast quadrant of the District of Columbia, on June 14, 2000. Under the Note which she signed, Ms. Vines promised to pay Allfirst the monthly sum of $1,087.01, beginning on August 1, 2000. However, an affidavit (dated January 19, 2006) from Steven Patrick, a representative of the company which managed Ms. Vines' loan, revealed only three payments during the period between August 1, 2000, and March 28, 2002:(1) $1,267.26 on September 29, 2000; (2) $632.00 on October 30, 2000; and (3) 446.50 on October 10, 2001.

The Note signed by Ms. Vines contained a Notice of Default Clause in Paragraph 6(C) which specified:

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

And, Paragraph 6(D) consisted of a No Waiver By Note Holder provision:

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Paragraph 21 of the Deed of Trust, which secured Ms. Vines' Note, set forth acceleration remedies and reads, in part:

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sum secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defenses of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. . . .

In accordance with Ms. Vines' Note and the Deed of Trust, Allfirst sent her a notice of default on December 12, 2000, indicating that her loan was in default, stating her delinquency in dollars, as well as the "[t]he total due to cure default and bring [her] loan current as of January 11,

2001." The notice also warned that her loan was subject to acceleration if she did not pay the delinquent amount, and further informed her of the sums due by December 31, 2000, and January 11, 2001, to avoid acceleration. In addition, the notice advised Ms. Vines of her rights.

Subsequently, on March 16, 2001, Ms. Vines filed a Chapter 13 petition for bankruptcy in the United States Bankruptcy Court for the District of Columbia. An automatic stay of all proceedings against her took effect, in accordance with 11 U.S.C. § 362(a). Consequently, the foreclosure process was interrupted. However, on October 16, 2001, the bankruptcy judge entered a consent order modifying the stay after finding that Ms. Vines had failed to make seven monthly payments, each in the amount of $1,249.26, from April 1, 2001, through October 1, 2001. When Ms. Vines did not abide by the terms of the consent order, Allfirst filed a certificate of failure to cure default on January 24, 2002, and the stay was lifted.

On February 19, 2002, counsel for Allfirst sent Ms. Vines a letter informing her that the bank would foreclose on the Deed of Trust securing her condominium unit, and advising her of the principal amount of her loan that was then due, as well as the possibility of reinstatement. Counsel enclosed a brochure advising her of her rights. The Notice of Foreclosure Sale of Real Property or Condominium Unit, recorded with the District of Columbia Recorder of Deeds, was sent to Ms. Vines by certified mail; the notice reflected the balance due on the note, the minimum balance required to cure the default, and the date, time and place of the foreclosure sale. Also sent to Ms. Vines by the same certified mail was a February 25, 2002, notice of foreclosure sale from counsel for Allfirst. The certified mail was unclaimed, but during her later deposition on January 3, 2006, Ms. Vines admitted that in March 2002 she knew the specific date of the foreclosure.[1] The foreclosure sale took place on March 28, 2002, and DC Properties purchased the condominium unit at a public auction.

DC Properties filed a complaint for possession in the Landlord and Tenant Branch of the Superior Court ("L & T") on November 19, 2004, after Ms. Vines failed to vacate the property following the notice to quit which the owner had sent to her. The parties consented to an L & T protective order on December 14, 2004, governing payments into the Court's Registry by Ms. Vines. Ms. Vines lodged an answer, plea of title, and counterclaim for wrongful foreclosure on December 30, 2004. Because of her plea of title, the case was certified to the Civil Division in February 2005. The Civil Division also imposed a protective order, and Ms. Vines made protective payments in March, May and June 2005.

While the complaint for possession was still pending, Ms. Vines filed a third-party complaint against Allfirst on June 24, 2005. DC Properties moved for judgment on its complaint for possession on January 13, 2006, due to Ms. Vines' failure to comply

---

1. The complete deposition of Ms. Vines is not included in the parties' joint appendix, or in the record, but the excerpts show the following exchange between counsel for Allfirst and Ms. Vines:

 Q. Have you seen that document before, ma'am?

 A. I don't remember seeing this particular one. I have a different notice....

 Q. And prior to the foreclosure, you knew that a foreclosure was coming; is that correct?

 A. Uh-huh.

 Q. And back in March of 2002, you knew what specific date the foreclosure was scheduled; is that correct?

 A. Yes.

with the protective order; Ms. Vines opposed the motion. And, M & T, the successor by merger to Allfirst, filed a motion for dismissal and/or summary judgment on the third-party complaint on January 25, 2006, which Ms. Vines opposed. In addition, Ms. Vines made a motion to modify the protective order by (a) reducing the amount of her monthly payments, and (b) allowing gradual payment of her arrearage.

In an order dated March 20, 2006, the trial court granted DC Properties' motion for judgment. The court declared that Ms. Vines had consented to protective order payments, failed to make nine consecutive payments, submitted no concrete proposal for making the outstanding payments, provided no basis for believing that she would make the payments in the future, and had prolonged the litigation by filing a plea of title and a third-party complaint. The court regarded these actions as "simply unfair" to DC Properties. Furthermore, the trial court struck Ms. Vines' plea of title. Pursuant to Super. Ct. Civ. R. 58 requiring "every judgment [to] be set forth on a separate document," the trial court entered an order of judgment for possession on March 20, 2006.

Two months later, on May 30, 2006, the trial court granted summary judgment to M & T on the ground that the third-party complaint was barred by the three-year statute of limitations. While recognizing that there is a fifteen-year statute of limitations for actions seeking equitable relief pertaining to recovery of lands, the court nevertheless concluded that the three-year statute of limitations is applicable. As the trial judge declared:

> Although the request for declaratory relief initially raised a question in the Court's mind, the Court is not persuaded that the third-party plaintiff's request that the Court "declare the foreclosure

wrongful" is the functional equivalent of a request for equitable relief, as no equitable relief relating to the "recovery of lands" is possible with respect to this third-party defendant, which no longer has either title to or possession of the property.

The trial court did not reach the merits of the notice issue, that is, whether Ms. Vines was given proper notice and an accurate statement regarding the minimum balance required to cure her default on the loan. The trial court issued a separate order of judgment on May 30, 2006. Ms. Vines filed a motion for reconsideration of the May 30, 2006 order on June 16, 2006, which the trial court denied on June 20, 2006, asserting that (1) the prayer for relief contained in the third-party complaint could not "reasonably be read to include a request for the equitable relief the defendant now says she seeks," that is, "that title to her former property be returned to her . . . ."; and (2) she could not rely on her plea of title because it already had been struck in its March 20th order, and the court had entered judgment for possession in favor of D.C. Properties on the same day.

Ms. Vines filed a Notice of Appeal on July 25, 2006. The Notice stated that she was appealing from the trial court's order of May 30, 2006.

## ANALYSIS

### *The Notice of Appeal Jurisdictional Issue* **(DC Properties' Complaint)**

 M & T contends that "[Ms.] Vines' failure to designate the March 20 and June [2]0 Orders renders this [c]ourt without jurisdiction to hear these claims on appeal." Ms. Vines did not file a reply brief but maintained during oral argument that this court has jurisdiction over all three of

the trial court's orders pertaining to this case, March 20, May 30, and June 20, 2006.

The 2004 version of D.C.App. R. 3 contains rules pertaining to the filing and contents of a notice of appeal. As it did in the past version of the notice of appeal rule, and as the federal rule provides, D.C.App. R. 3(c)(1)(B) specifies: "The notice of appeal must: ... designate the judgment, order, or part thereof being appealed." D.C.App. R. 3(c)(4) also mirrors federal appellate Rule 3(c)(4): "An appeal may not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice." D.C.App. R. 3(c)(5), however, differs from federal appellate rule 3(c)(5); the federal rule states simply: "Form 1 in the Appendix of Forms is a suggested form of a notice of appeal." In contrast, D.C.App. R. 3(c)(5) reads:

> Parties are encouraged to use Form 1 in filing all but criminal appeals and Form 2 in criminal appeals, though the use of a particular form is not required. Failure to provide any of the information requested on Form 1 or Form 2, except for the specification of the party or parties taking the appeal and the designation of the judgment or order, or part thereof being appealed, will not deprive the court of jurisdiction to consider the appeal. An appeal nevertheless may be dismissed if, after notice, the party or parties taking the appeal fail to provide the information requested on Form 1 or Form 2.

Under revised D.C.App. R. 3(c)(5), this court generally continues to construe Rule 3 liberally, *see Perry v. Sera*, 623 A.2d 1210, 1215 (D.C.1993), but there is an exception applicable to this particular case; that is, the court as a rule will hear an appeal, unless a party fails to designate "the judgment or order, or part thereof being appealed."

Here, the plain words of D.C.App. R. 3(c)(1)(B) state that a party "must designate the ... order ... being appealed," and there is an implicit warning contained in D.C.App. R. 3(c)(5), that the liberal construction of the rule will not apply if a party fails to designate the order appealed from. Yet, Ms. Vines listed on her Notice of Appeal only one "order being appealed from," that of May 30, 2006, but her brief challenges the March 20th order as well as the June 30th order. Form one, on which Ms. Vines filed her notice of appeal, however, unambiguously states: "Date of entry of judgment or order appealed from (if more than one judgment or order appeal[ed], list all)." But, Ms. Vines designated only one order, May 30, 2006. And, since she never attempted to seek leave of the court to correct her Form One prior to the filing of her brief, we hold that under D.C.App. R. 3(c)(5), we lack jurisdiction over the trial court's separate final March 20, 2006 order of judgment.[2]

### *The Summary Judgment Issue* (Ms. Vines' Third–Party Complaint)

█ Ms. Vines challenges the trial court's summary judgment ruling in favor of M & T on her third-party complaint. She maintains that

> The Court is to award a Party all of the relief to which [she] is entitled for the wrong committed against [her]. The

---

2. Our holding is not to imply that antecedent rulings in a case which typically merge in a final judgment and may be challenged as part of it must be separately designated in the notice of appeal. *See Flax v. Schertler*, 935 A.2d 1091, 1099–1100, 2007 WL 3375179 (D.C.2007). Here, the March 20 and May 30 dispositive orders involved separate final judgments and in that case the rule, by its terms, requires that both judgments have been designated in the notice.

"catch all" request made by [Ms.] Vines provides the Court with the power to give her all the relief to which she is entitled. The natural consequence of declaring a foreclosure wrongful is setting aside the sale. It therefore follows that the property would be returned to [Ms.] Vines.

She also makes an argument regarding the striking of her plea of title (that it "made clear that [Ms.] Vines sought the return of her property"), but the trial court struck her plea of title in its order of March 20, 2006, over which we have no jurisdiction, as indicated in our discussion of the first issue in this appeal. M & T claims that "the trial court's grant of summary judgment was independently justifiable and should be upheld."

We review the trial court's grant of summary judgment *de novo*. *The New 3145 Deauville, L.L.C. v. First Am. Title Ins. Co.*, 881 A.2d 624, 625 (D.C.2005). "[A] motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 627. "The court must view all evidence presented in the light most favorable to the nonmoving party and draw all reasonable inferences from the evidence for that party." *Id.* "The nonmoving party cannot survive a summary judgment motion on merely conclusory allegations or denials of the adverse party's pleadings; rather, the response [ ] by affidavits or as otherwise provided [Super. Ct. Civ. R. 56(e)], must set forth specific facts showing that there is a genuine issue for trial." *Id.* "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Here, the trial court pondered whether the three-year statute of limitations, or the fifteen-year statute of limitations (pertaining to the recovery of lands) applied to Ms. Vines' third-party complaint. Ultimately, the court was not "persuaded that the third-party plaintiff's request that the Court 'declare the foreclosure wrongful' is the functional equivalent of a request for equitable relief, as no equitable relief relating to the 'recovery of lands' is possible with respect to this third-party defendant, which no longer has either title to or possession of the property." Since Ms. Vines' third-party complaint sought declaratory relief and we have noted that "declaratory and injunctive relief are both forms of equitable relief," *see Crawford v. District of Columbia*, 891 A.2d 216, 219 n. 7 (D.C.2006), and because the trial court's nuanced rationale could be interpreted as saying that declaratory relief is not equitable relief, "we are dubious of the ground [ ] relied upon by the trial court," in granting M & T's motion for summary judgment. *Dorsey v. District of Columbia*, 839 A.2d 667, 669 (D.C.2003). Nevertheless, we may affirm the trial court's judgment "on a ground not ... considered" by the trial judge where "the trial court correctly [granted] the motion . . . ." *Id.* (quoting *Sheetz v. District of Columbia*, 629 A.2d 515, 519 n. 5 (D.C.1993)) (other citations and internal quotation marks omitted).

In its motion for summary judgment, M & T argued that the foreclosure on Ms. Vines' condo unit was lawful. The motion was supported by several documents, including (1) an affidavit from Steven Patrick of Wells Fargo, the company that managed Ms. Vines' Allfirst loan, which detailed the history of Ms. Vines' loan, her failure to make loan payments, and the sum required to cure the default in March 2002; (2) Ms. Vines' note and Deed of Trust; (3) the December 12, 2000, Notice of Default; (4) an affidavit from Martin Goldberg, an attorney and substitute trus-

tee on Ms. Vines' Deed of Trust, who summarized foreclosure procedures followed with respect to Ms. Vines' condo unit; (5) a February 19, 2002, letter to Ms. Vines from Allfirst's lawyer regarding the planned foreclosure on her condo unit; (6) the Notice of Foreclosure Sale filed with the Recorder of Deeds, a February 25, 2002, Notice of Foreclosure Sale, and the certified mail envelope addressed to Ms. Vines which revealed that both notices were unclaimed; (7) excerpts from Ms. Vines' deposition of January 3, 2006; and (8) Bankruptcy Court documents relating to post-petition arrearage under Ms. Vines' Deed of Trust and her default on a consent order entered by the Bankruptcy Court.

Ms. Vines filed an opposition to M & T's motion for summary judgment. She asserted, in part: "The failure to give the Defendant the notice required pursuant to the Deed of Trust does not entitle the Third Party Defendant to a judgment as a matter of law. Besides whether the notice was received by the Defendant is a material issue of fact." No evidentiary documents—for example, affidavits, deposition testimony, answers to interrogatories, admissions—were attached to Ms. Vines' opposition.

Based upon our *de novo* review of the record, and in light of the principles governing summary judgment, we hold that summary judgment in favor of M & T was proper because, as a matter of law, Ms. Vines cannot prevail on her wrongful foreclosure complaint.[3] Despite the extensive documentation (mortgage loan documents, affidavits, notices, deposition transcript excerpts, and Bankruptcy Court filings) submitted by M & T with its motion for summary judgment, Ms. Vines' opposition consisted only of her relatively short argument, unsupported by any evidentiary attachments. She claimed in the trial court that whether she received proper notice pursuant to the Deed of Trust "is a material issue of fact," and that M & T failed to give her proper notice pursuant to her Deed of Trust. On appeal, Ms. Vines' brief offers no cogent argument concerning her wrongful foreclosure claim. For example, she states: "[T]he general "catch all" relief requested in the Complaint should entitle [Ms.] Vines to recover her house if the foreclosure was wrongful. . . . The natural consequence of declaring a foreclosure wrongful is setting aside the sale. It therefore follows that the property would be returned to [Ms. Vines]."

■ During oral argument in this court, Ms. Vines insisted that the default notice, dated February 19, 2002, was not proper, but she did not make this argument in the trial court. And, as we have said consistently, "a plaintiff's mere unsworn statement of material facts in dispute is insufficient to defeat a motion for summary judgment." *Maupin v. Haylock*, No. 06–CV–270 (D.C. September 6, 2007) (citations omitted), 931 A.2d 1039, at 1042, 2007 D.C.App. Lexis 564, at *8; *see also Tobin v. John Grotta Co.*, 886 A.2d 87, 90 (D.C.2005) ("mere conclusory allegations by the non-moving party are legally insufficient to preclude entry of summary judgment") (citation omitted). Thus, "[w]here

---

3. For the same reason, Ms. Vines' challenge to the trial court's order denying her Motion for Reconsideration of the trial court's May 30, 2006 order must fail with respect to her wrongful foreclosure claim. Moreover, on this record and in light of the oral argument of Ms. Vines in this court, we see no reason to disturb the trial court's conclusion that it "need not reach" her argument, "that the answer and plea of title she interposed in opposition to the plaintiff's initial action for possession made clear that she sought a return of her property in the case"; that argument was foreclosed by the trial court's separate final order of judgment on March 20, 2006.

the moving party supports the motion for summary judgment with ... deposition responses or other evidence submitted under oath, the opposing party may not rely on general pleadings or a denial, but rather must respond similarly by [providing] material facts under oath which raise genuine issues of fact for trial." *Maupin,* 931 A.2d at 1042, 2007 D.C.App. Lexis 564, at *9 (citations and internal quotation marks omitted); *see also The New 1345 Deauville, L.L.C., supra,* 881 A.2d at 625.

Despite Ms. Vines' failure to sustain her burden in opposing M & T's motion for summary judgment, we must still satisfy ourselves that M & T is entitled to summary judgment. *See Hefazi v. Stiglitz,* 862 A.2d 901, 908 (D.C.2004) ("it is also important to confirm, on the basis of the pleadings, affidavits, and other papers, whether the trial court's summary judgment order [ ] [itself is] appropriate") (citation and internal quotation marks omitted). The record shows, through the affidavits of Mr. Patrick and Mr. Goldberg, as well as the mortgage loan documents, that M & T not only gave proper notice of default to Ms. Vines on December 12, 2000, in accordance with her Deed of Trust, but also sent to her, at her home address, proper certified mail notices of the foreclosure sale, which she did not claim. Nevertheless, Ms. Vines' deposition testimony reveals that she was aware of the date of the foreclosure sale. Moreover, after Ms. Vines filed a petition for bankruptcy in March 2001, which automatically stayed the initial steps toward the foreclosure on her condo unit, she agreed to a consent order modifying stay. The consent order, signed by bankruptcy counsel for Ms. Vines and sent to her at her address, sets forth her post-petition arrearage with respect to her loan payments, and details the process for cure payments and the issuance of a notice of default. In addition, M & T's notice of foreclosure sale was filed

with the Recorder of Deeds. In short, the record reflects that Ms. Vines was given proper notice of her default and the foreclosure sale, as well as the amounts necessary to cure her default, and the foreclosure sale. Under these circumstances, the trial court properly entered summary judgment in favor of M & T. *See The New 1345 Deauville, L.L.C., supra,* 881 A.2d at 625 ("There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*