Charles TAYLOR, Appellant,

v.

DISTRICT OF COLUMBIA WATER
AND SEWER AUTHORITY, et
al., Appellees.

No. 06–CV–1471.

District of Columbia Court of Appeals.

Argued March 4, 2008.

Decided Sept. 25, 2008.

Alexander Hillery, with whom David A. Branch, was on the brief, for appellant.

Karen E. Gray, Washington, with whom Grace E. Speights, was on the brief, for appellees.

Before WASHINGTON, Chief Judge, REID, Associate Judge, and STEADMAN, Senior Judge.

REID, Associate Judge:

This case involves a complaint filed against the District of Columbia Water and Sewer Authority ("WASA"), Jerry Johnson, Barbara A. Grier, and James J. Shabelski (collectively "appellees") by Charles Taylor, appellant, alleging various causes of action. Mr. Taylor challenges the trial court's dismissal of his prima facie tort claim under Super. Ct. Civ. R. 12(b)(6) and its denial of his motion to amend the complaint. He also asserts that the trial court improperly granted summary judgment in favor of WASA with respect to his battery, intentional infliction of emotional distress, and retaliation claims. We affirm in part and reverse in part.

### FACTUAL SUMMARY

The record shows that on March 24, 2005, Mr. Taylor filed a complaint against appellees which contained four causes of action: (1) battery (Count I); (2) violation of the District of Columbia Human Rights Act (Count II); (3) intentional or negligent infliction of emotional distress (Count III); and (4) prima facie tort (Count IV).[1] The

---

1. Earlier, on March 16, 2001, Mr. Taylor filed a class action lawsuit in the United States

complaint sets forth the following allegations. On March 25, 2004, at approximately 7:30 a.m., he and a co-worker, Abdus-Sartar Mulla, took the elevator to the fifth floor to get some coffee. As he was exiting the elevator, he saw Mr. Shabelski, a supervisor in the Design Department. Mr. Taylor and Mr. Mulla followed Mr. Shabelski through the door and into a workspace. "Mr. Shabelski turned around to face him, and blocked his path." Mr. Shabelski repeatedly blocked Mr. Taylor's path, and eventually asked him why he was on the fifth floor. Mr. Taylor explained that he was trying to get a cup of coffee. Mr. Shabelski said: " 'We don't want you on this floor!,' and he pushed Mr. Taylor in the area of Mr. Taylor's throat." Mr. Shabelski "exchanged words with Mr. Taylor" and "pushed" him two more times. "Mr. Taylor loudly yelled at Mr. Shabelski to stop," and Mr. Shabelski called one of Mr. Taylor's co-workers who grabbed and pulled Mr. Taylor into the hallway, inquired about what had happened, and then advised Mr. Taylor to file a grievance. "Mr. Taylor was extremely upset" and "started to cry." He "had complained to WASA's management about Mr. Shabel-

ski's behavior before, but the Defendant had never done anything about it." [2]

Later, Mr. Taylor's supervisor took him to see Ms. Grier, the Director of Human Resources, and Mr. Ken Barnhart, WASA's General Counsel. Mr. Taylor repeated what had happened, and added that "he didn't know what he would do if Mr. Shabelski assaulted him again." Subsequently, Ms. Grier gave Mr. Taylor a letter and informed him that he was being placed on paid administrative leave. "The letter stated that WASA 'has reasonable suspicion that you have made threats against an Authority employee....' " [3] Mr. Taylor's complaint further alleged that "WASA has engaged in a pattern and practice of disciplining non-management employees for disputes with supervisors," but had not taken action when supervisors were "clearly the aggressor." Consequently, "WASA has created an atmosphere in which its supervisory/management employees feel free to disrespect, abuse, and even assault and commit battery upon its non-management employees with impunity and without fear of any meaningful discipline or punishment."

District Court for the District of Columbia, and a first amended complaint in that lawsuit on April 27, 2001, alleging a pattern and practice of discrimination by WASA, a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (disparate treatment and disparate impact), and a violation of 42 U.S.C. § 1981. He sought certification of a proposed class of about 800 members. On March 13, 2007, the district court certified, as to liability for injunctive and declaratory relief, a "putative class of Black employees at WASA who sought and were denied positions, career ladder promotions, or other advancement, or whose advancement was delayed, or whose compensation was otherwise affected by WASA's alleged unlawful discrimination, from October 1996 through December 2000...." *Taylor v. District of Columbia Water & Sewer Auth.,* 241 F.R.D. 33, 35, 48 (2007).

**2.** The complaint indicated that union president advised Mr. Taylor to call the police. When the police arrived, Mr. Taylor recounted the earlier events. A police officer indicated that Mr. Shabelski should be arrested, but WASA's head of security intervened to advise the police officer that WASA's Human Resources Department "was handling the situation."

**3.** In addition, the letter directed Mr. Taylor to submit to a "fitness for duty evaluation," which would include "a medical examination conducted by [WASA's] Medical Director, Dr. Michelle Smith–Jeff[e]ries[,] and a psychological examination to be conducted by Dr. Richard Filson." After WASA received the medical reports, it would decide "the appropriateness of [his] return to work."

And, WASA's "actions were designed to punish Mr. Taylor and to retaliate against him for his role in bringing and continuing the class-action lawsuit against [ ]WASA."[4]

Defendants, appellees here, filed or joined in a motion to dismiss Mr. Taylor's complaint, which appellant opposed. In response, the trial court signed an order on December 6, 2005, dismissing Count IV of Mr. Taylor's complaint, the prima facie tort, on the ground that: "The Court cannot treat Count IV as a claim for failure to provide a safe workplace on some non-specific law."[5] On April 7, 2006, Mr. Taylor moved for leave to amend his complaint. The amendment reflected (1) a battery claim against WASA; (2) a claim for breach of duty to provide a reasonably safe workplace; and (3) a claim of racial discrimination under the DCHRA. He also sought an order permanently enjoining the defendants from any further retaliation against him. WASA filed its opposition on April 27, 2006, and on May 24, 2006, the court denied Mr. Taylor's motion to amend. The defendants moved for summary judgment on July 24, 2006; Mr. Taylor opposed the motion. By order dated November 9, 2006, the trial court granted the defendants' motion, essentially because Mr. Taylor "failed to demonstrate that a genuine issue of material fact exists."

## ANALYSIS

### The Prima Facie Tort Claim and the Motion for Leave to Amend

Mr. Taylor contends that the trial court erred by granting appellees' motion to dismiss Count IV of his complaint (prima facie tort) under Super. Ct. Civ. R. 12(b)(6), and abused its discretion by denying his motion for leave to amend his complaint to clarify his prima facie tort claim against WASA as one for breach of duty to provide a reasonably safe workplace. Our standard for reviewing a Rule 12(b)(6) motion is a familiar one: "Dismissal for failure to state a claim upon which relief can be granted is proper under Super. Ct. Civ. R. 12(b)(6) ..." only where it appears beyond doubt that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"; and we construe the complaint "in the light most favorable to the plaintiff ..." and take its allegations as true.[6] Under Super. Ct. Civ. R. 8(a), a plaintiff's complaint must "contain (1) a short and plain statement of the grounds upon which the Court's jurisdiction depends, ..." (2) a short and plain statement of the claim showing that "the pleader is entitled to relief, and (3) a demand for judgment for

---

4. The union president, Ms. Milton, filed a grievance on Mr. Taylor's behalf with Mr. Johnson, General Manager of WASA. Subsequently, Mr. Taylor's union invoked arbitration, and on November 29, 2004, the arbitrator found that there was insufficient evidence that Mr. Taylor had made a true threat; and concluded that WASA violated the CBA by placing him on administrative leave; and by requiring him to undergo a fitness for duty evaluation. Mr. Taylor was permitted to return to work immediately, and he did so in January of 2005.

5. With respect to the other counts, although the battery claim only mentioned Mr. Shabel-

ski, the trial court thought it could be interpreted as applying to the other defendants, and hence, the court dismissed Count I as to WASA, Ms. Grier, and Mr. Johnson, but denied the motion as to Mr. Shabelski. The trial court denied defendants' motion to dismiss the DCHRA claim, and also determined that Count II did not state a claim for negligent infliction of emotional distress, but that the court had jurisdiction over the intentional infliction of emotional distress claim.

6. *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C.1979) (internal quotation marks omitted).

the relief the pleader seeks."[7] Since this is a notice pleading jurisdiction,[8] we only require that plaintiff's statement of a claim " 'give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests.' "[9] "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."[10]

■ We are satisfied that Count IV states a claim for an established cause of action, and should not have been dismissed under Rule 12(b)(6).[11] The trial judge may have focused on the heading, prima facie tort, and properly concluded that we have

not recognized this tort in the District.[12] However, the prima facie tort is an intentional one,[13] and the substantive paragraphs of Count IV gave the defendants fair notice that Mr. Taylor was asserting a common law claim against WASA for breach of its duty to provide a safe work place, rather than another intentional tort; indeed his complaint included other intentional act claims—battery and intentional infliction of emotional distress. We have recognized a safe work place claim, saying previously: "It is well established in the District of Columbia that an employer owes a duty to provide all of its employees with a reasonably safe workplace."[14] In

7. *See also In re Estate of Curseen,* 890 A.2d 191, 193–94 (D.C.2006).

8. *See Warren v. Medlantic Health Group, Inc.,* 936 A.2d 733, 742 (D.C.2007).

9. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also In re Curseen, supra* note 7, 890 A.2d at 194; *Sarete, Inc. v. 1344 U St. Ltd. P'ship,* 871 A.2d 480, 497 (D.C.2005) (" 'a complaint is sufficient so long as it fairly puts the defendant on notice of the claim against him' ") (quoting *Scott v. District of Columbia,* 493 A.2d 319, 323 (D.C.1985)).

10. *Swierkiewicz, supra* note 9, 534 U.S. at 512, 122 S.Ct. 992 (citations omitted).

11. Count IV of Mr. Taylor's complaint reads as follows:
*Count IV*
*Prima Facie Tort*
[ ] The defendants had a duty to provide the Plaintiff with a safe workplace.
[ ] The Defendants breached their duty to provide the Plaintiff with a safe workplace.
Count IV was followed by the demand for relief, including specified damages, and attorney's fees, and costs.

12. *See Art–Metal–U.S.A., Inc. v. United States,* 577 F.Supp. 182, 184 (D.D.C.1983) ("District of Columbia courts have not embraced a form of generic tort like the *prima facie* tort recognized by New York courts. . . .").

13. Section 870 of the RESTATEMENT (SECOND) OF TORTS describes a prima facie tort, in part: "One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances." And, Comment a explains that this tort "is intended to serve as a guide for determining when liability should be imposed for harm that was intentionally inflicted, even though the conduct does not come within the requirements of one of the well established and named intentional torts." *See also Pulaski Constr. Co. v. Air Frame Hangars, Inc.,* 195 N.J. 457, 950 A.2d 868, 870 (2008) ("Assuming, without deciding, that our common law may admit of a cause of action for prima facie tort, it is solely a gap-filler. That is, the availability of the prima facie tort doctrine is limited exclusively to those instances of intentional and culpable conduct unjustified under the circumstances that, as a threshold matter, do not fall within a traditional tort cause of action.").

14. *Gordon v. Raven Sys. & Res., Inc.,* 462 A.2d 10, 14 (D.C.1983) (citing *Bailey v. Central Vermont Ry. Inc.,* 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943)) (other citations omitted); *see also Washington v. District of Columbia,* 256 U.S.App. D.C. 84, 87, 802 F.2d 1478, 1481 (1986) ("Under the common law of tort, an employer has a duty to provide, and an employee has a concomitant right to demand, a reasonably safe workplace.") (citing *Gordon, supra,* 462 A.2d at 14).

short, since Mr. Taylor's pleading was sufficient to satisfy our notice pleading standard, the trial court should not have dismissed Count IV pursuant to Rule 12(b)(6).

■ We turn now to Mr. Taylor's contention that the trial court abused its discretion by denying his motion to amend his complaint.[15] "Once a responsive pleading is served, a party may amend a prior pleading 'only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.'"[16] "In determining whether 'justice so requires' the grant of a motion to amend, [this court] take[s] note of five factors: (1) the number of requests to amend made by the movant; (2) the length of time the case has been pending; (3) bad faith or dilatory tactics on the part of the movant; (4) the merit of the proffered pleading; and (5) prejudice to the nonmoving party."[17] In considering these factors, we are mindful of what we said in *Good Food Servs., Inc., supra* note 17:

> "[T]he discretion accorded the trial court in deciding a motion for leave to amend is to be considered together with the prevailing spirit of liberalism in allowing such amendments when justice will be so served." Although the decision is a matter of trial court discretion, there is a "virtual presumption" a court should

grant leave to amend unless there is a good reason to the contrary. Thus, even lengthy delay, standing alone, is usually not a sufficient reason for the trial court to deny a motion to amend.[18]

■ We conclude that the trial court did not abuse its discretion by disallowing Mr. Taylor's request to amend his complaint to sue WASA for battery, and to add a new DCHRA discrimination cause of action. We need not determine whether the battery claim against WASA is precluded by the statute of limitations, as the trial court concluded, because we are persuaded by the trial court's second reason for denying the request—Mr. Taylor stated in his August 26, 2005 opposition to the motion to dismiss that the battery count was lodged only against Mr. Shabelski: "The battery claim [ ] is clearly against Mr. Shabelski, not the District of Columbia." Since he took this position, we see no trial court abuse of discretion in the denial of Mr. Taylor's request to amend Count I by adding WASA as a defendant.

With respect to the request to add a DCHRA discrimination count based on race, the trial court believed that Mr. Taylor was "attempting to litigate the same claim he is pursuing in federal court." Although the discrimination cause of action in our trial court is filed under the DCHRA, and the federal district court

---

**15.** "This court reviews a trial court's decision to permit or deny an amendment of pleadings for abuse of discretion." *Flax v. Schertler*, 935 A.2d 1091, 1105 (D.C.2007). Mr. Taylor sought to amend his complaint to reflect (1) that Count IV constituted a reasonably safe workplace claim (the substance of Count IV of the original complaint), (2) liability of WASA for battery (pertaining to Count I of the complaint), and (3) WASA's violation of the DCHRA by discriminating against him "with respect to his compensation, terms, conditions, or privileges of employment (a new claim beyond the Count II retaliation claim in the original complaint)."

**16.** *Sherman v. Adoption Ctr. of Washington, Inc.*, 741 A.2d 1031, 1037 (D.C.1999) (citing Super. Ct. Civ. R. 15(a)).

**17.** *Sherman, supra* note 16, 741 A.2d at 1038; *see also Howard Univ. v. Good Food Servs., Inc.*, 608 A.2d 116, 120 (D.C.1992).

**18.** *Good Food Servs., supra* note 17, 608 A.2d at 120 (citing *Eagle Wine & Liquor Co. v. Silverberg Elec. Co.*, 402 A.2d 31–35 (D.C. 1979) (citation omitted); *Bennett v. Fun & Fitness of Silver Hill*, 434 A.2d 476, 478 (D.C. 1981)).

complaint under Title VII of the Civil Rights Act of 1964, we are unable to determine on the limited record before us, whether the proposed DCHRA claim actually mirrors, in substance, the Title VII disparate treatment and disparate impact claims pending in the federal court. Mr. Taylor attempts to distinguish his District and federal claims, in part, as follows:

> The discrimination claim in Mr. Taylor's proposed amended complaint claims *disparate treatment*. The gravamen of Mr. Taylor's discrimination claims in federal court is that he and Defendant WASA's other black employees are victims of promotion and compensation policies, procedures and practices that, while they are facially neutral, have a *disparate impact* on its black employees.

The above statement appears to ignore the fact that Mr. Taylor's federal Title VII complaint embraces both disparate treatment and disparate impact claims. The statement also seems to overlook his August 25, 2006, declaration filed in the federal district court relating to the March 25, 2004 incident with Mr. Shabelski; it appears that the March 25, 2004 incident may well be part of the federal Title VII lawsuit. At any rate, the record simply is insufficient for us to determine whether the trial court abused its discretion by denying Mr. Taylor's motion for leave to amend his complaint to add a DCHRA discrimination complaint based on race.[19]

■ Our conclusion is different regarding the trial court's denial of Mr. Taylor's motion to amend Count IV of his complaint, which would have changed the heading to read, "Breach of Duty to Provide a Reasonably Safe Workplace." The proposed amendment set forth a detailed description of the claim and its elements, essentially by repeating and repositioning paragraphs that were in his original complaint. In examining the factors governing a decision to permit a plaintiff to amend his complaint, the trial court observed that Mr. Taylor had made no prior request to amend his complaint and no trial date had been set; and it could not "say that tremendous prejudice would result if the amendment were allowed." Nevertheless, the trial court found significance in Mr. Taylor's failure to explain "why he seeks to amend at this late date." Appellant's only request for amendment came in April 2006, about one year after his complaint was filed and approximately four months after the trial court had issued its order granting in part and denying in part the defendants' motion to dismiss the complaint. Yet, as Mr. Taylor stated in his motion for leave to amend, "[a]lthough discovery requests have been exchanged, no discovery responses have been exchanged, and no depositions have been taken." And the trial court had granted the joint motion to extend discovery to July 9, 2006. While we understand the court's desire to move the case forward, as well as its concern that Mr. Taylor stated no reason for his delay in moving to amend, nevertheless, the delay was not protracted; the substance of the proposed amendment was not significantly different from the substance of Count IV in

---

19. *See Cobb v. Standard Drug Co.,* 453 A.2d 110, 112 (D.C.1982) ("Appellate review is limited to matters appearing in the record before us ....") (citations omitted). Furthermore, we are not convinced that the trial court abused its discretion in denying Mr. Taylor's motion to amend his complaint by adding "a count seeking an order permanently enjoining the Defendants from further retaliating against him." His treatment of this contention in his main brief is quite cursory, and in his reply brief he argues that WASA would not have been prejudiced and that his motion should have been granted "because injunctive relief is available for violations of the DCHRA." But, he offers nothing to suggest that the alleged retaliation has been ongoing since the alleged March 25, 2004 incident.

the original complaint; there is no indication of bad faith or dilatory behavior or motive on Mr. Taylor's part; and as the trial court acknowledged, the amendment of Count IV would not result in "undue prejudice to the opposing party." [20] Under the peculiar circumstances of this case, we are constrained to conclude that the trial court abused its discretion in denying Mr. Taylor's motion to amend Count IV of his complaint.

### The Summary Judgment Motion

 Mr. Taylor claims that the trial court improperly granted summary judgment on his battery, intentional infliction of emotional distress, and retaliation claims. The trial court found that Mr. Taylor incorrectly asserted "that he is not required, at this stage, to address defendants' argument that his claims for [b]attery and [i]ntentional [i]nfliction of [e]motional [d]istress [ ] are precluded by the Worker's Compensation Act [ ]." Defendants argued in the trial court:

> Because any alleged injuries Plaintiff sustained as a result of the encounter with Mr. Shabelski on March 25, 2004, and the placement of Plaintiff on paid administrative leave occurred during the course of Plaintiff's employment, his exclusive remedy is a claim under the WCA, and Plaintiff cannot seek redress through this Court for such alleged injuries.

Our case law teaches that:

> [W]hen there is a "substantial question" whether the WCA applies, the administrative agency charged with implementing the statute, given its special expertise, has a "primary jurisdiction" to "make the initial determination concerning coverage" before the courts can exercise jurisdiction. . . .
>
> The trial court should [ ] not have dismissed the claims. Instead, the trial court should have stayed the proceeding pending the DOES's disposition of these claims.

*Joyner v. Sibley Mem'l Hosp.*[21] Consistent with our case law, we conclude that the trial court erred by granting defendants' motion for summary judgment regarding Mr. Taylor's battery and intentional infliction of emotional distress claims, thereby dismissing those claims; instead, the trial court should have stayed the proceeding to allow Mr. Taylor to present these claims to the Department of Employee Services ("DOES").[22] As we said in *Georgetown Univ. v. District of Columbia Dep't of Employment Servs.*:

> Before the matter was tried, the hospital moved for summary judgment on juris-

---

20. *See Good Food Servs., Inc., supra* note 17, 608 A.2d at 120 ("Undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, and undue prejudice to the opposing party are all valid grounds for refusing to allow [an] amendment [to a pleading].").

21. *Joyner v. Sibley Mem'l Hosp.*, 826 A.2d 362, 374 (D.C.2003) (citing *Tekle v. Foot Traffic*, 699 A.2d 410, 413 (D.C.1997) (" 'Because we conclude that there is a substantial question concerning the applicability of the WCA, we remand this matter to the trial court *with instructions to stay the proceeding* until [plaintiff] has had reasonable time to present her

claims to the DOES.' ") (emphasis added) (other citation omitted)).

22. *See id.* at 375 n. 15 (primary jurisdiction conferred on "the administrative agency charged with implementing the [WCA], given its special expertise, ... unless the injuries were *clearly* not compensable under the statute") (emphasis in original) (internal quotation marks omitted). Although a question concerning the statute of limitations was raised during oral argument, defendants' answer did not raise the statute of limitations as an affirmative defense; nor did defendants invoke the statute of limitations in their motion for summary judgment in the trial court.

dictional grounds, citing the exclusivity provision of the [WCA]. Mindful of the holding of this court in *Harrington v. Moss,* 407 A.2d 658, 661–62 (D.C.1979), the Superior Court stayed the civil matter in order to permit [DOES] to determine whether it has jurisdiction over the matter pursuant to the [WCA]. Thus the trial court properly deferred to the administrative agency having primary jurisdiction over the issue of compensability under the Act.[23]

■■■■■■■ Finally, Mr. Taylor argues that the trial court should have denied defendants' motion for summary judgment as to his retaliation claim. Defendants assert that he failed to establish a *prima facie* case of retaliation, because he suffered no adverse personnel action, and because the evidence was insufficient to establish a causal connection between his class action lawsuit and any adverse personnel action. We review the trial court's grant of summary judgment *de novo.*[24] To make out a *prima facie* case of retaliation, the plaintiff must establish: (1)[he] was engaged in a protected activity, or that [he] opposed practices made unlawful "by the DCHRA; (2) the employer took an adverse personnel action against [him];

and (3) a causal connection existed between the two."[25] We conclude that Mr. Taylor has not met his burden to show a causal connection between his protected activity and the alleged adverse action. "[A]n employee may establish the causal connection between the adverse employment action (assuming it exists) and the protected activity (here filing a class action discrimination lawsuit) 'by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity.' "[26]

Mr. Taylor commenced his race discrimination action against WASA before the Equal Opportunity Commission in September 2000, and filed his 2001 federal class action lawsuit after receiving a right to sue letter; the district court denied WASA's motion to dismiss that lawsuit in January 2002.[27] Assuming that WASA had knowledge of his class action complaint, WASA did not place him on paid administrative leave until March 2004, years after the initiation of his action with the EEOC and his later filing in the federal court. Hence, "the temporal proximity between protected activity and [the alleged] adverse employment action" was not sufficiently "close."[28]

**23.** 830 A.2d 865, 869 (D.C.2003) (citing *Joyner, supra* note 21) ("stay, rather than dismissal, of tort action is appropriate to enable DOES to consider coverage of [WCA] ").

**24.** *The New 3145 Deauville, L.L.C. v. First Am. Title Ins. Co.,* 881 A.2d 624, 625 (D.C.2005). We grant a motion for summary judgment only "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 627. In determining if there is a genuine issue as to any material fact, we must "view all the evidence presented in the light most favorable to the nonmoving party and draw all reasonable inferences from the evidence for that party." *Id.* Likewise, " '[t]here is no [genuine] issue for trial unless there is sufficient evidence favoring the nonmoving party

for a jury to return a verdict for that party.' " *Id.*

**25.** *Howard Univ. v. Green,* 652 A.2d 41, 45 (D.C.1994) (citing *Young v. Sutherland,* 631 A.2d 354, 368 (D.C.1993)) (other citations omitted).

**26.** *Nicola v. The Washington Times Corp.,* 947 A.2d 1164, 1175 (D.C.2008) (quoting *McFarland v. George Washington Univ.,* 935 A.2d 337, 356 (D.C.2007)).

**27.** *Taylor v. District of Columbia Water & Sewer Auth.,* 205 F.R.D. 43, 45, 46 (D.D.C. 2002).

**28.** *Nicola, supra* note 26, 947 A.2d at 1175 ("[W]here a plaintiff seeks to establish causa-

Mr. Taylor seeks to skirt the temporal proximity requirement by arguing that "[t]here is no direct evidence of retaliation" in his case, but that the factual circumstances revolving around WASA's actions toward him (especially when compared with WASA's treatment of Mr. Shabelski after he physically assaulted another employee), "support an inference that the Defendants' actions against [him] were retaliatory." [29] We reject his argument because "it is too speculative" [30] to demonstrate the causal connection between his class action lawsuit and WASA's action placing him on paid administrative leave. Indeed, the circumstances on which Mr. Taylor relies apparently all took place around 2004, long after the beginning of his legal action against WASA.

Accordingly, and in sum, we first hold that the trial court erred by dismissing Count IV of Mr. Taylor's complaint under Super. Ct. Civ. R. 12(b)(6), and the court abused its discretion by denying Mr. Taylor leave to amend that count; hence, we remand the case to the trial court with instructions to reinstate Count IV of the complaint and to permit Mr. Taylor to amend that count. Second, we affirm the trial court's denial of Mr. Taylor's request for leave to amend his complaint to add WASA as a defendant on his battery claim, and to add a discrimination cause of action under the DCHRA. Third, we reverse the trial court's ruling on defendants' summary judgment motion as to the battery and intentional infliction of emotional distress counts, and remand this case to the trial court with instructions to stay the civil court proceeding so that Mr. Taylor may present these claims to DOES. Fourth, we affirm the trial court's grant of summary judgment in favor of defendants on Mr. Taylor's retaliation claim.

*So ordered.*

---

tion by pointing to the temporal proximity between protected activity and adverse employment action, the temporal proximity must be very close.") (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)) (internal quotation marks omitted).

**29.** In his reply brief, he contends:
There is sufficient indirect evidence of causation that Mr. Taylor is not simply relying on a temporal relationship between his pro-tected activity and the adverse employment actions. He has detailed the particular, inflexible, relentless, utterly unjustifiable harshness of WASA's actions toward him. The character of those actions are evidence that WASA was motivated by something other than an impartial desire to get the truth and to maintain order in its workplace.

**30.** *McFarland, supra* note 26, 935 A.2d at 359.